UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CIVIL ACTION NO. 1:16-cv-02323-MSK-KLM

RILEY McCLURE,

Individually,

Plaintiff,


vs.

IMPERIAL WOODWORKING COMPANY
AND IMPERIAL WOODWORKING
ENTERPRISES, INC.,
Defendants.

_____

IMPERIAL WOODWORKING ENTERPRISES, INC.'S OPPOSITION TO
RILEY MCCLURE'S MOTION TO DISMISS COUNTERCLAIM
_____

Defendant/Counter-Plaintiff, Imperial Woodworking Enterprises, Inc. ("Enterprises" or the "Company"), by and through its attorneys, Baker & McKenzie LLP, hereby submits this memorandum in opposition to Plaintiff/Counter-Defendant Riley McClure ("McClure")'s motion to dismiss the Company's counterclaim pursuant to Fed. R. Civ. P. 12(b)(6).  In support of its memorandum, Enterprises states as follows:

**RESPONSE TO MCCLURE'S STATEMENT OF ELEMENTS NOT ALLEGED IN THE COMPLAINT**

McClure's motion asserts that Enterprises was required, but failed, to allege two elements as part of its claim for breach of duty of loyalty.  (Mt. to Dismiss, Dkt. # 22 at pp. 3-4.)  In accordance with Civ. Practice Standard 7.6.1(d), Enterprises denies that either element is required for a breach of duty of loyalty claim and further states the following:

1.   **Disputed**:  "Mr. McClure, while employed by Enterprises, acquired a material benefit (or any benefit) from his actions, See, Restatement (Third) Agency § 8.02 . . . "

<u>Response</u>:  Enterprises is not required to allege that McClure obtained a material benefit from his actions in order to state a claim for breach of duty of loyalty; *see Graphic Directions v. Bush*, 862 P.2d 1020, 1022 (Colo. App. 1993), discussed below in Section I.  Furthermore, an employee may breach his[1] duty of loyalty even if his solicitation is ultimately unsuccessful; *see* Rest. (3d) Agency § 8.02, Illus. 6, discussed below in Section I.B.  Notwithstanding the above, Enterprises alleged that McClure acquired a material benefit in the form of significant wages and bonuses paid to him during the period he was disloyal (Counterclaim, Dkt. #15 at p. 15, ¶ 17); *see Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 499-500 (Colo. 1989); *Health Grades v. Christopher Boyer & Patrick Singson*, 2011 Colo. Dist. LEXIS 709, *5-6 (Colo. Dist. Ct. 2011), discussed below in Section I.B.

2.   **Disputed**:  "Mr. McClure, while employed by Enterprises, competed with Enterprises, as opposed to preparing for competition following termination of the agency relationship.  See, Restatement (Third) Agency § 8.04."

<u>Response</u>:  Similarly, Enterprises is not required to allege that McClure competed with Enterprises rather than "prepar(ed) for competition" in order to establish a breach of duty of loyalty claim; *see Graphic Directions*, 862 P.2d at 1022, discussed below in Section I.  McClure's allegation that his actions were preparatory, and therefore privileged, is an affirmative defense and improper for consideration in his motion to dismiss; *see Cocona, Inc. v. Singtex Indus. Co.*, No. 14-cv-01593-MJW, 2014 U.S. Dist. LEXIS 144184, at *3-4 (D. Colo. Oct. 9, 2014); *Radil v. Sanborn Western Camps, Inc.*, 384 F.3d 1220, 1224-27 (10th Cir. 2004)

---

[1] Because the employee at issue here is male, Enterprises will refer to and describe an employee's duty of loyalty using exclusively male pronouns.

discussed in Section I.C., below.  Additionally, while an employee may have a privilege to prepare or make arrangements to compete with his employer prior to leaving that employment, the nature of those preparations is significant in determining whether the employee may have breached his or her duty of loyalty to the employer.  *See Jet Courier,* 771 P.2d at 493; *Koontz v. Rosener*, 787 P.2d 192, 195 (Colo. App. 1989).  As discussed in Section I.C. below, McClure's argument regarding his actions is a factual inquiry to be developed through discovery, and not properly considered in a motion to dismiss; *see Hammond v. Intervention,* Civil Action No. 14-cv-00242-MEH, 2014 U.S. Dist. LEXIS 138655, at *20-21 (D. Colo. Sep. 30, 2014); *Byler v. Elicit Life LLC*, Civil Action No. 14-cv-2103-WJM-NYW, 2015 U.S. Dist. LEXIS 51569.

## LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), the complaint (or here, the counterclaim) must be construed in the light most favorable to the non-moving party, and all well-pleaded factual allegations must be taken as true.  *Pace v. Swerdlow*, 519 F.3d 1067, 1073 (10th Cir. 2008).  While the allegations must plausibly suggest, above a speculative level, that the non-moving party is entitled to relief, Enterprises need only "nudge[] [its] claims across the line from conceivable to plausible."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  If the allegations are not "so general that they encompass a wide swath of conduct, much of it innocent," then a motion to dismiss should be denied.  *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (discussing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)).  Dismissal is proper only when it appears beyond doubt that no set of facts will support a plaintiff's right to relief.  *Gregory v. U.S./U.S. Bankruptcy Court for Dist. of Colorado,* 942 F.2d 1498, 1500 (10th Cir. 1991) *cert. denied,* 119 L. Ed. 2d 202, 112 S. Ct. 2276 (1992).

## ARGUMENT

In his motion to dismiss, McClure does not dispute that he was employed by Enterprises during the time of his disloyal activity, nor does he dispute that he owed a duty of loyalty to Enterprises.  Further, McClure admits in his motion that he did, in fact, have a conversation with Mr. Tsang at Decca Furniture Limited ("Decca"), although he recasts the nature and substance of the conversation.  (Dkt. # 22 at p. 9.)   The thrust of McClure's argument for dismissing Enterprises's counterclaim is that Enterprises has not alleged facts to support a claim for breach of duty of loyalty, but his reasoning is based on a misapprehension of the law and a mischaracterization of Enterprises's counterclaim.  For the reasons set forth below, this Court should deny the motion to dismiss.

**I.      Enterprises Sufficiently Stated A Claim Against McClure For Breach of Duty of Loyalty To The Company.**

In Colorado, an employee's duty of loyalty is largely derived from the Colorado Supreme Court's decision in *Jet Courier*, 771 P.2d 486 (Colo. 1989).  There, the court looked to the Restatement of Agency, as well as decisions from courts in other jurisdictions, to find that an employee owes a duty of loyalty to his employer.  *Id*.  The *Jet Courier* decision has since been analyzed and applied by both Colorado state courts and this court.  For example, in *Graphic Directions*, 862 P.2d at 1022, the Colorado Court of Appeals outlined the elements of a claim for breach of duty of loyalty against an employee: (1) the employee was acting as a fiduciary of the employer; (2) the employee breached his fiduciary duty to the employer; (3) the employer suffered damages; and (4) the employee's breach of fiduciary duty was the cause of the employer's damages.  Thus, as an initial matter, the breach of duty of loyalty elements set forth by McClure in his motion to dismiss are incorrect; Enterprises is not required to, for example, prove that McClure received a material benefit from a third party in connection with his breach

4

of duty. (Dkt. # 22 at p. 2.) Additionally, and as explained more fully below, Enterprises has met its preliminary burden of establishing a plausible claim for breach of duty of loyalty under Colorado law, and McClure's arguments to the contrary are meritless.

### A.   Solicitation Of A Supplier Breaches An Employee's Duty Of Loyalty.

McClure first claims that his duty of loyalty to Enterprises applies only to prohibit solicitation of the Company's customers or employees. (Dkt. # 22 at pp. 8-12.) This is an overly-narrow reading of the duty of loyalty. Indeed, this Court has previously held to the contrary; namely, that an employee breached his duty of loyalty when that employee solicited a third party, in that case a distributor. *T.A. Pelsue Co. v. Grand Enters.*, 782 F. Supp. 1476 (D. Colo. 1991). In *T.A. Pelsue Co.*, the plaintiff employer, Pelsue, manufactured and sold products designed for use in construction and maintenance of outside plant facilities. *Id*. at 1482. One of the defendants, Pelsue's former vice president, consultant, and member of its board of directors, formed a competing business while still employed by Pelsue. *Id*. In holding that the employee breached his duty of loyalty, this Court cited the fact that the employee engaged a third-party distributor, which already had a distributors' agreement with Pelsue to sell Pelsue's products — information that the employee knew by virtue of his long-term relationship with Pelsue[2] — to distribute the employee's own competing products. *Id*. at 1486-87. Clearly, then, an employee's duty of loyalty in Colorado expands beyond solicitation of clients and coworkers. Thus, while it does not appear that Colorado courts have yet analyzed an employee's duty of loyalty with respect to the solicitation of a supplier or vendor, it does appear that the scope of the duty extends to entities with similarly important relationships to the employer, in line with the Restatement of Agency from which Colorado's duty of loyalty is derived.

---

[2] Comparatively, in his role as Vice President and Project Manager for Enterprises, McClure was responsible for maintaining Enterprises's relationship with Decca and was undoubtedly aware of the special relationship between the companies. (Dkt. # 15 at pp. 15-16, ¶¶ 16, 19-20.)

Indeed, when confronted with this specific issue, courts in other jurisdictions that, like Colorado, have based their common law on the Restatement of Agency, have specifically found an employee breached his duty of loyalty by soliciting a supplier. It is particularly appropriate for the Court to follow the lead of the Colorado Supreme Court and look to courts outside of Colorado to define an employee's duty of loyalty when based on the Restatement of Agency. *See Jet Courier*, 771 P.2d at 492 ("Other courts have applied the Restatement's agency principles to define an employee's duty of loyalty to his employer."). For example, in *APC Filtration, Inc. v. Becker*, No. 07-CV-1462, 2008 U.S. Dist. LEXIS 59228 (N.D. Ill. Aug. 4, 2008), the District Court granted summary judgment to the employer with respect to its claims that its former employee had breached his duty of loyalty by soliciting a supplier. The facts of *APC Filtration* bear repeating here in some detail because of their striking similarity to the present case. The plaintiff's, APC's, supply chain consisted primarily of Chinese companies. *Id*. at *2-4. APC employed the defendant, Becker, as a national sales manager who, during his employment, contacted a former APC employee to discuss going into business with one of APC's major Chinese suppliers of products essential to its business, Zehua. *Id*. at *4-5. Becker then traveled to China to visit Zehua's factory and negotiate the final terms of the agreement between Zehua and SourceOne, the company Becker set up to compete with APC. *Id*. at *6. Subsequently, Becker set up a rival business that entered into an exclusive contract with Zehua. *Id*. APC then sued Becker for breach of his duty of loyalty. *Id*. at *7. In finding for APC, the court explained:

> Zehua was a major supplier of APC's product, and subsequent to Becker's contract with Zehua, APC has provided evidence that it has been forced to: (1) pay higher supply costs to another supplier to fill the void caused by losing Zehua; (2) travel to China and incur expenses in attempting to find a replacement supplier; and (3) forgo business as a result of being unable to fill orders previously filled by Zehua. Defendants do not dispute this evidence, but counter that because Zehua's existence is not a trade secret, Becker was within his rights to enter into a business relationship with it. **But Defendants offer no legal**

6

> **support for the proposition that an employee -- consistent with his duty of loyalty -- may for his own benefit solicit and enter into a contractual relationship with his employer's principal supplier that prohibits the supplier from continuing to do business with the employer**.

*Id*. at \*21-22 (emphasis added).

Likewise, the Eastern District of Wisconsin recently opined that an employer had a valid claim for breach of duty of loyalty against a former employee for soliciting the employer's suppliers. *Centec, LLC v. Plutshack*, No. 15-C-1401, 2016 U.S. Dist. LEXIS 85371, at \*17-18 (E.D. Wis. June 30, 2016) ("Centec also contends that . . . Plutshack continues to do business with the *suppliers* he secretly solicited while Centec was under the impression that he was acting on its behalf. . . . Perhaps Centec has a right to recover any profits that Plutshack earns through his ongoing relationships with these suppliers as a remedy for Plutshack's breach of his state-law duties to Centec." (emphasis added)).  In short, under the common law of agency as it has developed, McClure's solicitation of Decca constituted a breach of his duty of loyalty to Enterprises.

Further to this point, and contrary to McClure's assertion, there is no qualitative difference between the solicitation of coworkers and the solicitation of a supplier, especially a principal supplier such as Decca.  (Dkt. # 22 at p. 10.)  McClure concedes in his motion that solicitation of customers or coworkers has the "obvious potential to reduce revenue or interrupt business operations," and that the departure of customers or coworkers can "dramatically impact or even shut down a business." (*Id*. at pp. 10-11.)  These consequences, McClure alleges, are ill-effects that the solicitation of a company's suppliers cannot render, therefore making the duty of loyalty inapplicable to such action.  (*Id*.)  This is of course a fact question and, as such, inappropriate for resolution by way of a motion to dismiss.  *See, e.g., See Hammond*, 2014 U.S. Dist. LEXIS 138655 at \*20-21; *Byler*, 2015 U.S. Dist. LEXIS 51569 at \*6.  Strikingly, however,

7

the facts showed that the employer in *APC Filtration* suffered nearly the exact adverse consequences for Becker's wrongful solicitation of a supplier that McClure alleges are unique to the solicitation of coworkers or clients.  Specifically, the employer in *APC Filtration* presented evidence that, as a result of Becker's conduct, it was forced to (1) pay higher supply costs to another supplier to fill the void caused by losing its principal supplier; (2) travel to China and incur expenses in attempted to find a replacement supplier; and (3) forego business as a result of being unable to fill orders previously filled by its principal supplier.  *APC Filtration*, 2008 U.S. Dist. LEXIS 59228 at *21-22.

Similarly here, and as alleged by Enterprises in its counterclaim, Decca is a unique, principal supplier to Enterprises; it is one of the few companies in the world that can produce high-quality woodwork and accents at below market prices and, if Enterprises were to lose Decca as a supplier, it would substantially harm, if not destroy, Enterprises's business.  (Dkt. # 15 at p. 15, ¶¶ 13-15.)  As explained below, the fact that McClure was ultimately unsuccessful in his solicitation of Decca is inconsequential to Enterprises's counterclaim.  If McClure were successful, however, Enterprises would likely have experienced similar, if not the exact same damages as the employer in *APC Filtration*.  Thus, under Colorado law, McClure's solicitation of Decca as Enterprises's principal supplier constituted a breach of his duty of loyalty to Enterprises and his motion to dismiss should be denied.

**B.      Successful Solicitation Is Not Required For An Employee To Breach His Duty of Loyalty.**

McClure alternatively argues Enterprises's counterclaim should be dismissed because McClure obtained no material benefit, from a third party or otherwise, for his disloyal actions. (Dkt. # 22 at pp. 3, 5.)  McClure's argument is based on a misapprehension of the law and

ignores key elements of Enterprises's pleadings.  The Restatement (3d) of Agency[3] specifically provides that an agent's success in his solicitation is not necessary for his actions to constitute a breach.  Restatement § 8.02's Illustration No. 6 requires McClure's argument to be rejected. Illustration No. 6 specifically recognizes that an unsuccessful attempt at solicitation nonetheless creates liability (paraphrased):

> P, who owns a used car lot, employs A as its general manager. A's duties include contracting with suppliers of used cars to replenish P's inventory.  A tells S, another supplier of used cars, that A will not consider purchasing cars from S unless S pays A a $1,000 in advance of any transaction. S refuses to pay A. A is subject to liability to P.

Thus, although the agent in the above Illustration was not successful in attempts to acquire a material benefit from a third party through the use of his position, the agent was nonetheless liable to the principal for breaching his duty of loyalty.  As an agent who breached his duty of loyalty, McClure is obligated to disgorge his bonus and his salary during the period he was breaching his duty of loyalty.  *See Jet Courier*, 771 P.2d at 499-500 (citing Rest. (2d) Agency § 469 ("agent is entitled to no compensation for conduct . . . . which is a breach of his duty of loyalty") and concluding "Jet argues that Mulei would not be entitled to any compensation or bonus payments for the period in which he was disloyal. We agree.").  Accordingly, although McClure was unsuccessful in his attempt to form a competing business with Decca, this is immaterial to the fact that, by his conduct, he breached his duty of loyalty to Enterprises.  *See, e.g., Hahn v. OnBoard, LLC*, No. 09-3639 (MAS), 2011 U.S. Dist. LEXIS 115144, at *37 (D.N.J.

---

[3] Colorado has implicitly adopted the Restatement of Agency by basing the state's duty of loyalty on it. *See, e.g., Lucht's Concrete Pumping, Inc. v. Horner*, 224 P.3d 355, 360 (Colo. App. 2009) (noting that an employee's duty of loyalty is largely derived from the Restatement of Agency) (overturned on other grounds); *see also Jet Courier*, 771 P.2d at 492.  It is therefore incumbent on the Court, in interpreting Colorado law, to determine the extent of the duty as defined in the Restatement of Agency.  *Cf. Carney v. Pac. R.R. Co*, 2016 IL 118984, ¶ 78.

Oct. 5, 2011) ("Solicitation of an employer's clients, even if the solicitation is unsuccessful, may constitute a breach of the duty of loyalty.").

To the extent that McClure asserts he obtained no material benefit from his disloyal acts[4] (i.e., that Enterprises did not suffer damages because his solicitation of Decca was unsuccessful), this argument ignores the fact that Enterprises paid McClure significant wages and bonuses during the period that he was disloyal to the Company.  (Dkt. # 15 at p. 15, ¶ 17.)   Colorado courts have held that the wages and bonuses paid to a disloyal employee constitute damages resulting from that employee's breach of duty.  *See, e.g., Health Grades*, 2011 Colo. Dist. LEXIS 709 at *5-6 (citing *Jet Courier* in explaining that an employee is not entitled to compensation for services performed during the period he engaged in activities constituting a breach of loyalty, and finding that "Because [plaintiff employer] paid Defendants significant wages and bonuses during the period [Defendants were allegedly competing in a disloyal manner], the Court finds there is a reasonable inference that [plaintiff] did suffer damages or harm.").   By virtue of the fact that Decca is Enterprises's principal supplier, Enterprises could have easily suffered further damages as illustrated in Section I.A., *supra*, if McClure had been successful in his solicitation.   As *Jet Courier* provides, the potential impact of an employee's actions on the employer's operations is an indicative factor that an employee breached his duty of loyalty to his employer, and the potential impact of McClure's actions on Enterprises's business is indicative of his breach here.  *Jet Courier*, 771 P.2d at 497.

## C.    An Employee's Ability To Prepare To Compete Is Not Absolute.

McClure next argues facts that are essentially the basis of an affirmative defense to the counterclaim, namely that his actions with respect to Decca are privileged because he was simply

---

[4] Specifically, McClure claims that Enterprises failed to allege that McClure, while employed by Enterprises, acquired a material benefit (or any benefit) from his actions (Dkt. #22 at p. 3), and "[t]here is no allegation that Mr. McClure received any material benefit from his actions" (*Id.* at p. 5).

"prepar[ing] to compete" with Enterprises.  (Dkt. # 22 at pp. 10, 13.)  As an initial matter, this argument is improper under Rule 12(b)(6), as a motion to dismiss attacks only the sufficiency of the pleadings.  Affirmative matters, such as "privilege," are presented by way of a motion for summary judgment under Fed. R. Civ. P. 56.  *See, e.g., Cocona, Inc.*, 2014 U.S. Dist. LEXIS 144184 at *3-4 ("Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint. If, from the allegations of the complaint as well as any judicially noticeable materials, an asserted defense raises disputed issues of fact, dismissal under Rule 12(b)(6) is improper."); *Radil*, 384 F.3d at 1224-27 (deciding that where factual dispute exists as to affirmative defense in workers' comp statute, issue must be put to the trier of fact).

Even if the Court were to consider this argument (which it should not), McClure states the law too broadly while simultaneously minimizing his own actions.  Although the court in *Jet Courier* acknowledged a "privilege in favor of employees which enables them to prepare or make arrangements to compete with their employers prior to leaving the employ of their prospective rivals without fear of incurring liability for breach of their fiduciary duty of loyalty," it noted the line separating mere preparation from active competition may be difficult to discern in some cases and, consequently, it is the nature of the employee's preparations that is significant in determining whether a breach has occurred.  *Jet Courier,* 771 P.2d at 493.  Fairness dictates that an employee not be permitted to exploit the trust of his employer so as to obtain an unfair advantage in competing with the employer in a matter concerning the latter's business.  *Id*. at 492, (quoting *Maryland Metals, Inc. v. Metzner,* 282 Md. 31, 382 A.2d 564, 568 (1978)).  While an employee may have a privilege to prepare or make arrangements to compete with his employer prior to leaving that employment, the nature of those preparations is significant in determining

whether the employee may have breached his or her duty of loyalty to the employer. *Koontz*, 787 P.2d at 195; *T.A. Pelsue Co.*, 782 F. Supp. at 1485. Enterprises has located no case in which the employee completed all actions required by him to bring to fruition the breach of duty of loyalty but was stymied only by the fact the third party said "no deal." *Contra* Rest. (3d) Agency § 8.02, Illus. 6. Thus, an employee's ability to prepare to compete is not absolute, but rather limited by his duty of loyalty to his employer. At minimum, the question of whether McClure's "preparations" were privileged or a breach of his duty of loyalty to Enterprises is a question of fact and therefore inappropriate for resolution on a motion to dismiss. *See Hammond*, 2014 U.S. Dist. LEXIS 138655 at *20-21 ("[T]he Defendants raise factual issues that are likely disputed by the Plaintiff and, thus, are not properly considered in the present motion to dismiss."); *Byler*, 2015 U.S. Dist. LEXIS 51569 at *6 (describing defendants' argument that plaintiff failed to plead ownership of a trademark as "a classic factual dispute to be developed through discovery. It does not support a Rule 12(b)(6) dismissal.").

As described by the Restatement of Agency, which McClure quotes in his brief, "[A]n agent may take action, ***not otherwise wrongful***, to prepare for competition ***following termination*** of the agency relationship." Rest. (3d) Agency, § 8.04 (emphasis added). Even based on the plain language of the Restatement, McClure "preparations" defense is already problematic because (i) during the time his disloyal conduct occurred, he was still an employee of Enterprises and his agency relationship with the Company had not yet terminated; and (ii) his actions were "otherwise wrongful," as characterized by the court in *APC Filtration*. *APC Filtration*, 2008 U.S. Dist. LEXIS 59228 at *32 ("[T]he Court concludes that Becker crossed the line by competing with APC for customers and suppliers while still employed by APC."). Without the benefit of an affidavit or other competing evidence, McClure characterizes

his actions with respect to Decca as "single conversation" for "the purpose of obtaining employment" or for "future business."  (Dkt. # 22 at pp. 9-10.)

Even were it proper to consider assertions by counsel, McClure's reasoning is dubious for several reasons.  First, this is not a simple case of McClure submitting a resume to Decca to apply for an open position; rather, McClure initiated contact with Decca about a subject in which it apparently had no interest.  Further, the fact that McClure only had one conversation with Decca is irrelevant.  *See* Rest. (3d) Agency § 8.02, Illus. 6.  Rather, it is the substance of that conversation — during which McClure proposed starting a competing venture with Decca, Enterprises's principal supplier, which (according to McClure himself) would effectively put Enterprises out of business — that is key.  (Dkt. # 15 at pp. 17-18, ¶¶ 32, 36.)  It should also not be overlooked that McClure flew halfway around the world to have that conversation face-to-face with Mr. Tsang — at Enterprises's expense, no less.  (*Id*. at p. 17, ¶¶ 29-31.)  Enterprises is not basing its counterclaim on passing remarks or aimless musings made by McClure during a telephone conversation that was otherwise for Enterprises's benefit.  To the contrary, McClure was evidently so serious about soliciting Decca that he took what was likely a 24-hour flight to make his case to Decca's owner in person.  To draw an analogy from criminal law principles, McClure's actions in connection with his solicitation of Decca constitute overt acts beyond mere preparation – they were positive steps towards the execution of his plan to compete against Enterprises.  Consistent with *Jet Courier*, activities constituting a breach of the duty of loyalty are questions of fact to be determined based on a consideration of all the circumstances in the case.. In sum, the facts alleged by Enterprises support its counterclaim that McClure breached his duty.  *Jet Courier*, 771 P.2d at 494.  McClure's motion to dismiss is therefore improper and should accordingly be denied.

## II. An Employee's Duty of Loyalty And Duty of Performance Are Part And Parcel Of The Same Obligation.

McClure also attempts to characterize some of the facts alleged by Enterprises in support of its counterclaim as a "duty of performance" issue, as though that duty were separate from his duty of loyalty to the Company. (Dkt. # 22 at p. 6.) McClure's argument suffers from the same fatal flaw as before: his interpretation of an employee's duty of loyalty is too narrow and not in line with Colorado law. In *Jet Courier*, the Colorado Supreme Court recognized an employee's duties of performance and good faith within his duty of loyalty:

> Section 387 of the Restatement (Second) of Agency provides that "unless otherwise agreed, an agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency." Rest. (2d) Agency § 387 (1957). Other courts have applied the Restatement's agency principles to define an employee's duty of loyalty to his employer. *See, e.g.,* *AGA Aktiebolag v. ABA Optical Corp.*, 441 F. Supp. 747, 754 (E.D.N.Y. 1977) (employee owes fiduciary duty to employer and is prohibited from acting in any manner inconsistent with the agency during his employment; **employee is bound at all times during employment to exercise the utmost good faith and loyalty in the performance of his duties**); *Las Luminarias of New Mexico Council of the Blind v. Isengard*, 92 N.M. 297, 587 P.2d 444, 449 (N.M. App. 1978) (employment relationship is one of trust and confidence; **employee has duty to use best efforts on behalf of employer**); *see also Bancroft-Whitney Co. v. Glen*, 64 Cal. 2d 327, 411 P.2d 921, 935, 49 Cal. Rptr. 825 (Cal. 1966).

*Jet Courier Serv.,* 771 P.2d at 492 (emphasis added). Consistent with the Restatement of Agency, and as the Colorado Supreme Court further opined, an employee's duty of loyalty is multi-faceted, and the duty not to compete is simply one slice of the orange. *Id.* at 492-93 (quoting Rest. (2d) Agency § 393).

To the extent it is necessary to review case law outside of the Colorado, those decisions support this view. *See, e.g., Official Comm. of Unsecured Creditors v. Hendricks (In re Dwight's Piano Co.)*, 424 B.R. 260, 288 (S.D. Ohio 2009) ("The duty of good faith, **a subset of the duty of loyalty**, requires an 'honesty of purpose,' and a 'genuine care' for the fiduciary's

constituents. Good faith is generally defined in terms of the lack thereof or a demonstration of bad faith. . . .Thus, an action taken with the intent to harm the corporation is a disloyal act in bad faith. Also, deliberate indifference and inaction in the face of a duty to act is bad-faith conduct.") (emphasis added); *Heart's Desire, LLC v. Edwards*, 46222 (La. App. 2 Cir 04/27/11), 66 So. 3d 82 ("The alleged actions of the defendants insofar as their conduct consisted of deliberate harm to the business of Heart's Desire during the time of their employment may amount in our opinion to a violation of . . . the employee's duty of loyalty."); *Sylvester v. Beck*, 406 Pa. 607, 610, 178 A.2d 755, 757 (1962) ("There can be no doubt that an agent owes a duty of loyalty to his principal and in all matters, affecting the subject of his agency, he must act with the utmost good faith in the furtherance and advancement of the interests of his principal.").

Enterprises alleges that McClure refused to settle a fee dispute with a subcontractor (Dkt. # 15 at p. 16, ¶ 22); told an Enterprises client that he would get the disputed money from them anyway (*Id*. at p. 16, ¶ 24); and sold a substantial project to MGM National Harbor Casino under market price (*Id*. at p. 17, ¶ 25). These allegations all rise to and meet the plausibility test of *Twombly* and *Iqbal*, and they are not non-actionable "acts of performance failure" as McClure claims. (Dkt. # 22 at p. 6.) Rather, these are examples of instances in which McClure disloyally acted in bad faith to harm Enterprises. This conduct independently constitutes a breach of duty of loyalty (counter)claim against him. At the very least, however, the issue of whether McClure's actions were intended to deliberately harm Enterprises are questions of fact, the resolution of which would be premature at the present stage of the litigation. *See Hammond*, 2014 U.S. Dist. LEXIS 138655 at *20-21; *Byler*, 2015 U.S. Dist. LEXIS 51569 at *6.

**III.    Enterprises Conducted A Reasonable Investigation Prior To Filing Its Counterclaim.**

McClure's assertion that the Company's counterclaim should be dismissed based upon his unsubstantiated claims as to the extent of its investigation flies in the face of prior decisions of this Court.  In *Lee v. City & Cty. of Denver*, No. 14-cv-02574-RBJ, 2015 U.S. Dist. LEXIS 6041, at *8-9 (D. Colo. Jan. 20, 2015), this Court held it was proper to "assume the truth of the matters asserted, including claims about what others have said. . . . The defendants are welcome to dispute the use of those statements as evidence at a later stage of the litigation (if they have a sound basis for doing so) but not for purposes of this motion [to dismiss]. . . . [T]he statements of [third parties] as well as the statistics provided upon information and belief are sufficient, taken together, to make out such a claim."  To the extent a response to McClure's argument is necessary, the specificity of Enterprises's pleading evidences that the Company conducted a good faith investigation into the matters asserted in the counterclaim.  (Dkt. # 15 at pp. 17-18, ¶¶ 27-38.)  McClure's unsupported argument that Enterprises has failed in the some way failed to comply with Fed. R. Civ. P. 11 should be rejected.

**IV.    Enterprises Stated An Independent Claim For Unjust Enrichment.**

Finally, McClure alleges that Enterprises's counterclaim for unjust enrichment is only plead as a remedy for its breach of duty of loyalty claim, and that it cannot stand independently if the Company's counterclaim for breach of duty of loyalty is dismissed.  (Dkt. # 22 at pp. 14-15.) While this Court has acknowledged unjust enrichment is an equitable remedy that is not available when a remedy at law lies to address the same conduct, it has also recognized that Colorado law provides limited situations in which a claim for unjust enrichment may piggyback on certain tort claims.  *L-3 Communs. Corp. v. Jaxon Eng'g & Maint., Inc.*, 125 F. Supp. 3d 1155, 1175-76 (D. Colo. 2015) (analyzing *Harris Group, Inc. v. Robinson*, 209 P.3d 1188, 1205

(Colo.App. 2009) and finding that plaintiff's unjust enrichment claim was cognizable to the extent it sought a restitution-based remedy on its tort claims, including breach of fiduciary duty). This Court explained:

> [T]ort claims generally offer compensatory relief, entitling the plaintiff to damages that offset "the harm done to him". Unjust enrichment, by contrast, provides an equitable, restitution-based remedy that allows the plaintiff "to recover the gain acquired by the defendant through the wrongful act." Thus, unjust enrichment entitles the wronged plaintiff to recover not only compensation for his own injuries, but to also strip the tortfeasor defendant of the benefits of having perpetrated the wrongful act.

*Id*. at 1175.  If this Court dismisses Enterprises's counterclaim for breach of duty of loyalty — which Enterprises adamantly advocates this Court should not — the Company's unjust enrichment claim can and should survive, as it seeks relief for which Enterprises would, under the circumstances, no longer have an adequate remedy at law.  Since Enterprises has plead the elements of a case for unjust enrichment (i.e., that (1) McClure received a benefit, (2) at Enterprises's expense (3) under circumstances that would make it unjust for the him to retain the benefit without commensurate compensation; *see e.g., Sterenbuch v. Goss*, 266 P.3d 428, 437 (Colo. App. 2011)), its counterclaim for unjust enrichment is properly plead.  Accordingly, McClure's motion to dismiss should be denied.

///

///

///

///

///

///

///

## CONCLUSION

For the foregoing reasons, Imperial Woodworking Enterprises, Inc. respectfully requests that this Court deny Riley McClure's motion to dismiss its counterclaim.  Alternatively, the Company requests leave to re-plead the counterclaim.


Dated:  November 7, 2016                         Respectfully submitted,

                                                                By: s/ Douglas A. Darch
                                                                    **_Douglas A. Darch_**

                                                                    Douglas A. Darch
                                                                    Laura E. Zabele
                                                                    Baker & McKenzie LLP
                                                                    300 E Randolph Street, Suite 5000
                                                                    Chicago, Illinois  60601
                                                                    Telephone: (312) 861-8000
                                                                    Fax: (312) 861-2899
                                                                    douglas.darch@bakermckenzie.com
                                                                    laura.zabele@bakermckenzie.com

                                                                    **ATTORNEYS FOR IMPERIAL
                                                                    WOODWORKING ENTERPRISES,
                                                                    INC.**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 7th day of November, 2016, a true a correct copy of the foregoing **IMPERIAL WOODWORKING ENTERPRISES, INC.'S OPPOSITION TO RILEY MCCLURE'S MOTION TO DISMISS COUNTERCLAIM** has been filed with the Clerk of the Court and will be served on Plaintiff's counsel at the following address via the Court's CM/ECF system:

> Donna Dell'Olio
> CORNISH & DELL'OLIO, P.C.
> 431 N. Cascade Avenue
> Colorado Springs, Colorado  80903
> Phone: (719) 475-1204
> Fax: (719) 475-1264
> ddellolio@cornishanddellolio.com

s/ Douglas A. Darch
*Douglas A. Darch*